IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

CHAD ALLEN,

                Plaintiff

    VS.

RICKEY HARDAWAY, *et al.*,

                Defendants

NO.  5: 03-CV-399 (CWH)

PROCEEDINGS UNDER 42 U.S.C. §1983
BEFORE THE U. S. MAGISTRATE JUDGE

# O R D E R

This case was brought by plaintiff Chad Allen, who alleges that the defendants violated his Eighth and Fourteenth Amendment rights by failing to protect him from an assault while he was incarcerated at the Jackson Georgia Diagnostic and Classification Prison (GDCP) and by failing to provide *proper* medical treatment once he brought the assault to their attention.  Before the court is the defendants' motion for summary judgment. Tab #45.  Plaintiff Allen has responded to the motion (Tab #54) and the defendants have replied to the plaintiff's response (Tab #67).  All of the pleadings are supported by briefs, and both sides have submitted statements of material facts.  Also in the record are depositions and affidavits. All parties have consented for this matter to be heard and disposed of by the undersigned United States magistrate judge.

**SUMMARY JUDGMENT STANDARD**

Rule 56 of the *Federal Rules of Civil Procedure* dealing with motions for summary judgment provides as follows:

> *The motion shall be served at least 10 days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.*

Summary judgment can only be granted if there are no genuine issues of material fact and if the moving party is entitled to judgment as a matter of law. *Fed.R.Civ.P. 56(c);* **Warrior Tombigbee Transportation Co. v. M/V Nan Fung**, 695 F.2d 1294, 1296 (11th Cir. 1983). While the evidence and all factual inferences therefrom must be viewed by the court in the light most favorable to the party opposing the motion, the party opposing the granting of the motion for summary judgment cannot rest on his pleadings to present an issue of fact but must make a response to the motion by filing affidavits, depositions, or otherwise in order to persuade the court that there are material facts present in the case which must be presented to a jury for resolution. *See* **Van T. Junkins & Assoc. v. U.S. Industries, Inc.**, 736 F.2d 656, 658 (11th Cir. 1984).

Specifically, the party seeking summary judgment bears the initial burden to demonstrate to the court the basis for its motion by identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions which it believes show that there is an absence of any genuine issue of material fact. **Hairston v. The Gainesville Sun Publishing Co.**, 9 F.3d 913 (11th Cir.1998). In determining whether the moving party has met this burden, the court must review the evidence and all factual inferences drawn from this, in the light most favorable to the non-moving party. **Welch v. Celotex Corp.**, 951 F.2d 1235, 1237 (11th Cir. 1992).

If the moving party successfully meets this burden, the burden then shifts to the non-moving party to establish by going beyond the pleadings, that there are genuine issues of material fact to be resolved by a fact-finder. **Clark v. Coats & Clark, Inc**., 929 F.2d 604, 608 (11th Cir. 1991). Genuine issues are those as to which the evidence is such that a reasonable jury could find for the non-movant. **Anderson v. Liberty Lobby, Inc**., 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).[1]

### FACTS

**Taken in the light most favorable to the plaintiff, the facts are as follows**: On Friday, November 30, 2003, Plaintiff Allen, a Caucasian man of slight build, was incarcerated in Cellblock A of GCDP.

---

[1] *See also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (the purpose of summary judgment is to pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial); Brown v. City of Clewiston, 848 F.2d 1534, 1543 (11th Cir. 1988) (the question is whether the record as a whole could lead a rational trier of fact to find for the nonmovant).*

Cellblock A is a general population block where both violent and non-violent criminals are housed. A religious service referred to as "Friday Night Jackson" was customary on Friday Nights at GCDP, and about half of the inmates attended the service while the others would remain in the dorm where one guard would be stationed to oversee them.[2] Prison protocol called for inmates to be released individually by way of a "call out" process if they wished to go to Friday Night Jackson.

On November 30, 2003, according to plaintiff Allen, the call out procedure was not followed (as it often was not), and up to one hundred inmates walked around the dorm freely when the cells were opened. The prison staff members were aware that by releasing all of the inmates at once, the inmates would be able to get into other inmates' cells if the prison security staff was not attentive. Again, according to plaintiff, prison protocol does not permit inmates to ever be in a cell other than his own, but that rule was not often enforced. Plaintiff Allen did not know that even if locked, cell doors in Cellblock A could be jimmied open using a prisoner identification card, but many of the prisoners and the defendant prison staff members were aware of that fact.

After his cellmate left to go to the Friday Night Jackson service, plaintiff Allen, assuming that his cellmate had locked the cell door behind him, retired to the toilet where he engineered a privacy curtain out of a blanket. At this time, Cellblock A was loud enough that a guard would not have been able to hear a cry for help coming from Allen's cell and the cell could not be seen by the single guard who was, at the time, in another part of the cellblock.

While reading on the toilet, Allen was suddenly attacked and put in a choke-hold by a large African-American man. There was also another man in the room who Allen also believes to have been black because of the way he talked; however, Allen did not get a clear look at either assailant.[3] As a result of the choke-hold administered on him, Allen nearly lost consciousness and was in a daze as he felt his attackers put something up his rectum and then flee the cell. When he came out of the daze, Allen found himself to be bleeding because of what turned out to be an asthma inhaler having been forced into his anus.

- 3 -

---

[2]There are generally about 250 inmates housed in Cellblock A, and if roughly half of the inmates attended Friday Night Jackson, it would stand to reason that between 100 and 150 inmates were being overseen by a single guard.

[3]Allen could not identify the men who attacked him when he was shown photographs of them, but he believed that if he saw them in person again he might be able to point them out, which is why he asked to return to Cellblock A when he was released from segregation. The race of the men is of importance because the plaintiff offers that there is a history of racial tension in GDCP and that the prison staff was all aware of that tension.

After getting dressed, Allen went to find a correctional officer so that he could get medical treatment. Allen found defendant prison guard Rickey Hardaway who was socializing with some inmates, as Hardaway often did (in violation of prison regulations). Allen told Hardaway that he had been attacked and needed medical attention. Hardaway, apparently not believing him because Allen had no visible cuts or bruises, told Allen to return to his cell; Allen protested until Hardaway called the Officer in Charge Office (OIC) at 8:05 P.M. and informed defendant Thomas Barron of Allen's complaints. About ten minutes later, Allen was escorted to the OIC office where defendants Barron and Warren Atkins chastised him, accusing Allen of being homosexual and sticking something up his own anus.

By 8:25 p.m., Allen had been taken to the medical area of GDCP where he was examined by a nurse and found to have an anal tear of less than 2 centimeters. The nurse wrote out a witness statement and received a doctor's order to transport Allen to the regional hospital via van. Defendant Barron, who was responsible for arranging transportation from the prison to the hospital, brought Allen a witness statement and insisted that he fill it out before going to the hospital.

Allen was admitted at the hospital at 12:30 a.m. on December 1. There is a dispute as to how long Allen waited for transportation from the prison to the jail; the times that are not disputed are that the nurse's examination ending at about 9:30 P. M. and plaintiff's admission to the hospital at 12:30 A.M. There is evidence in the record that the hospital is a twenty minute drive from the prison, and it therefore follows that Allen waited for about two and a half hours once transportation was ordered until he got in the van. There is no testimony in the record regarding the amount of time it "should" take to get a van to transport an inmate to the hospital on a Friday night at GDCP, but nurse Adrienne Ackley's affidavit states that after she had found that plaintiff Allen's injuries were not life-threatening, the delay in treatment was not unreasonable.

Plaintiff alleges that the delay in transportation was intentional and offers support for that claim by stating that Barron and Atkins made disparaging statements while he was waiting for treatment. While Allen was waiting, he was in pain and was given ibuprofen.[4] Although plaintiff has provided no testimony to state so, the court will infer from the facts that defendants Barron and Atkins were subjectively aware that Allen was uncomfortable and that they understood that the sooner Allen could get to an emergency room, the sooner his pain would be alleviated.

---

[4] When he got to the hospital, Allen described his pain as being a continuous ache that measured five out of ten on a "pain scale."

Since the plaintiff had injuries that were not life-threatening, his treatment in the emergency room was delayed, but the defendants had no control over that. The plaintiff does not contest the treatment he was afforded once he was seen in the emergency room.

There were video cameras installed in Cellblock A on the night of the incident, but the images produced by the only camera that could have recorded the incident were not clear. Though some prison officials appear to have viewed a blurry video tape that depicts what happened on November 30th, no recording of the assault can be found.

Allen submitted a complaint regarding the incident and the statements of two inmates – Frank Wayne and Tony Brown – to the effect that they had overheard inmate Kevin Carter (nicknamed "Shaq") admit to attacking Allen. After the incident, defendant Hardaway found Kevin Carter in another inmate's cell (which is a violation of prison policy), but Carter was not disciplined for anything that happened that night.

Importantly, plaintiff Allen had never been assaulted before the incident on November 30th, had no enemies of which he or any defendant was aware, and had never raised any security concern to a prison guard; that is, plaintiff had never complained to any prison official of any threat to his safety and well-being.

## DISCUSSION

### Defendant Lifsey

The plaintiff concedes after concluding discovery that summary judgment is appropriate with respect to defendant George Lifsey. Accordingly, judgment is hereby GRANTED to defendant Lifsey.

### Deliberate Indifference: Failure to Protect

Allen's first claim is that by permitting the prison to be in such a condition that would allow for him to be attacked in the way he was, the defendants – particularly officer Hardaway as the guard on duty at the time Allen was assaulted and Fredrick Head as the warden who knew of and permitted the conditions that the

- 5 -

plaintiff alleges provided other inmates the opportunity to assault him[5] – were deliberately indifferent to his well being. "[D]eliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *McElligot v. Foley*, 182 F. 3d 1248, 1255 (11th Cir. 1999).

The benchmark case dealing with protection against inmate-on-inmate violence is *Farmer v. Brennan*, 511 U.S. 825 (1994), which holds that

> *It is not . . . every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety. [A] prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be objectively, sufficiently serious. . . For a claim (like the one here) based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm.*
>
> *The second requirement follows from the principle that only the unnecessary and wanton infliction of pain implicates the Eighth Amendment. To violate the Cruel and Unusual Punishments Clause, a prison official must have a sufficiently culpable state of mind. Id.* at 834. (Internal punctuation and citations omitted.)

Plaintiff Allen has testified that the procedure followed on November 30, 2006, was no different than the procedure followed "ninety percent of the time" on Friday nights while he was incarcerated in Cellblock A (Affidavit of Chad Allen at ¶5); he has provided no evidence of any other assaults that occurred as a result of that procedure. If a procedure has been followed numerous times and never resulted in any assault or injury, it does not represent a "substantial risk" and therefore cannot support in a finding of deliberate indifference. Furthermore, even if the conditions presented a substantial risk, there is no way to infer a subjective appreciation of that risk on the part of any defendant in this case.

While Kevin Carter's deposition testimony shows that there are "a lot" of fights in the cell block (Deposition of Kevin Carter at 15), the plaintiff points to nothing in the record showing if serious injuries have resulted from inmate-on-inmate violence as a result of the procedures followed during Friday Night Jackson. Without a showing of the subjective knowledge and disregard of a substantial risk of serious harm, the defendants are entitled to summary judgment on that claim.

---

[5]The plaintiff has not provided any specific allegations regarding defendants Atkins or Barrow with respect to an alleged deliberately indifferent failure to protect.

As stated in the facts *supra*, Officer Hardaway was the officer on duty in Cellblock A when the alleged assault occurred. The plaintiff has shown no subjective knowledge on the part of defendant Hardaway that plaintiff Allen was in substantial danger. There is no evidence that defendant Hardaway was ever made aware of any potential danger to plaintiff Allen from those who allegedly assaulted him.

Plaintiff Allen has shown no subjective awareness on the part of any defendant that their actions or inactions resulted in a *substantial* risk of *serious* harm to the plaintiff. While the procedures used in the prison were not ideal, and might have been negligent, they simply do not amount to a deliberately indifferent failure to protect Chad Allen from other inmates in Cellblock A on November 30, 2003.

### Deliberate Indifference: Failure to treat / Delay of treatment

Plaintiff Allen's second cause of action is that defendants Atkins and Barrow intentionally delayed his transport from the prison to the hospital emergency room. In the Eleventh Circuit, there cannot be a finding of deliberate indifference unless there is more than *de minimis* injury. **Boxer X v. Harris**, 437 F.3d 1107, 1111 (11th Cir. 2006). The affidavit of Dr. Chryssochoos, the surgeon who removed the inhaler from the plaintiff's anus, states that "there was no unreasonable delay in transporting Allen" to the hospital, and "[a]ny delay that may have occurred had no effect on Allen's medical condition." Affidavit of Dr. John Chryssochoos, Tab # 45, Attachment 6 at ¶11.

Since no injury came as a result of any alleged delay in treatment, the only way Allen could prevail with respect to defendants Aktins and Barrow is if these defendants intentionally delayed access to medical treatment and that delay was "tantamount to unnecessary and wanton infliction of pain." **Hill v. Dekalb Regional Youth Detention Center**, 40 F.3d 1176, 1187 (11th Cir. 1994). "Delay or even denial of medical treatment for superficial, nonserious physical conditions does not constitute an Eighth Amendment violation." *Id.* at 1187-88.

*The tolerable length of delay in providing medical attention depends on the nature of the medical need and the reason for the delay. A few hours' delay in receiving medical care for emergency needs such as broken bones and bleeding cuts may constitute deliberate indifference. Delayed treatment for injuries that are of a lesser degree of immediacy than broken bones and bleeding cuts, but that are obvious serious medical needs, may also give rise to constitutional claims.* **Harris v. Coweta County**, 21 F.3d 388, 393-394 (11th Cir. 1994) (Citations omitted).

Plaintiff Allen's injury — a 2 centimeter tear in his rectum as the result of the insertion of a foreign body into his anus — while traumatic, is not as serious as those indicated in *Harris* in which the court held that a few hours' delay *may* constitute deliberate indifference. Regardless of the reason, a two or three hour delay in receiving medical attention for an injury that is not life-threatening, presents no prospect of further or irreparable injury, and only results in a consistent ache of moderate pain does not constitute deliberate indifference to a serious medical need.

## CONCLUSION

Accordingly, IT IS ORDERED that the defendants' motion for summary judgment (Tab #45) be GRANTED with respect to all defendants and all claims.

SO ORDERED, this 23rd day of OCTOBER, 2006.



                    CLAUDE W. HICKS, JR.
                    UNITED STATES MAGISTRATE JUDGE